1   595
112 467

No. 87.—ISAAC L. ANDERSON, and LUCINDA, his wife, plaintiffs
in error, *vs.* HENRY BAKER, defendant in error.

1   595
128 328

To constitute a valid parol-gift of a chattel, there must be an immediate delivery of
the same by the donor to the donee.

The bare declaration of the donor, that " she had given certain negroes to the donee,
and had no right to sell them," is not sufficient to pass the title to the donee, with-
out evidence of *some act*, from which the jury may presume a delivery of the pro-
perty, where the donor remains in possession of the property, exercising dominion
over it until her death.

This was an action of trover for several slaves, Phebe and her children,
brought by the plaintiffs in error against the defendant, in Warren Supe-
rior Court, and was tried on the appeal, before Judge Sayre, at October
Term, 1846.

The conversion of the slaves by the defendant, and their value, with
the value of their hire, was proven.

Nancy Baker was examined by commission, in behalf of the plaintiffs,
who testified, that some time in the year 1834, Mrs. Elizabeth Williams,
former owner of the slaves sued for, requested her to give to her her daugh-
ter Lucinda, (wife of plaintiff,) as an adopted child, promised to send her
to school, and did so, and manifested affection for her ; and in the same
year said *she had given her Phebe and her children.* The conversation
was at Mrs. W.'s residence. The negroes remained in the possession
of Mrs. W. up to the time of her death. The witness was disappointed
in the will of Mrs. W. ; expected that Lucinda was to have the negroes
that Mrs. W. said she had given to her ; heard Lucinda express disap-
pointment at the contents of Mrs. W.'s will, but never heard her say
that she expected the negroes, Phebe and children, to be given her in
said will ; heard Lucinda say, since Mrs. W.'s death, that she had heard
that Mrs. W. had in a will, written by William Harris, left her the said
negroes. Witness was the mother of the plaintiff Lucinda.

Amanda Brown was also examined by commission, in behalf of the
plaintiffs, who testified that she had heard Mrs. W. say, that Curran Bat-
tle wished to buy *Semanson,* a son of Phebe, but that she had no right to
sell him, because she had given him to said Lucinda. This was after the
intermarriage of the plaintiffs. Witness heard Mrs. W., at different times
within three or four years before her death say, that she had given Phebe
and her children, the negroes in dispute, to the said Lucinda, and that
she had adopted her ; witness did not hear the conversation between
Battle and Mrs. W. ; it was in 1838 or '39. The said negroes were then
in the possession of Mrs. W., and continued in her possession until her
death ; often heard Mrs. W. say, that she regarded the said Lucinda as
her child, had given her some property and intended to give her more.

Curran Battle was then introduced in behalf of the plaintiffs. He tes-
tified that he knew Phebe and her children in 1839 and '40, and went
to Mrs. W. to purchase Semanson. Mrs. W. refused to sell him, because
she had given him, as she said, to said Lucinda, but not by deed of
gift. Witness told her she had a right to sell him ; she disputed it, said
her word was her bond, and she could not sell him, and that at her death,

Lucinda should have him. Witness had known the negroes for twelve years before the death of Mrs. W.; part of them had been in possession of Mrs. W. from the death of her husband; some of them had been with Alfred Baker in Augusta, in 1837-38-39; witness knew that the plaintiff, Isaac L. Anderson, married the said Lucinda in 1836 or '37; was present at the marriage; Lucinda was then 17 or 18 years of age; after her marriage, she left the house of Mrs. W. who died in 1843.

The counsel for the plaintiffs here closed.

The counsel for the defendant in error, then introduced the will of Mrs. W., which was read, by the first clause of which, the negroes in dispute were given to the children of Henry Baker, the defendant. The will was dated 15th of July, 1842, and admitted to probate, July term, 1843, of Warren Court of Ordinary. The said Henry Baker was admitted to be the duly qualified executor of said will.

Martha Gibson, examined by commission, in behalf of the defendant, testified that said Lucinda stated in her presence, that " if Mr. Gibson had kept the will, she would have had Phebe and children, but as old Henry had taken it, he had it according to his notion." This was on 4th July, 1843.

Thomas Gibson, examined for the defendant by commission, testified that he heard Lucinda say in the fore part of the year 1836, that her aunt, Mrs. W., had left her fifteen negroes in her will. He had witnessed two wills for Mrs. W., one in 1835, the other in 1837. The first he had read in part, and saw that there was a bequest of Phebe and her children to said Lucinda, and he informed her of it. He knew nothing of any gift.

The testimony on both sides having closed, the counsel for the plaintiffs requested the court to charge the jury.

1st. That if the gift was complete in Mrs. W.'s lifetime, her will could not affect the rights of the parties.

2d. That the jury had the right to infer delivery, and every other requisite of a good and valid gift, from the declarations of the donor, " *that she had given the negroes to the donee,*" " *that they belonged to her, and that she had no right to sell them.*"

3d. That if the jury was satisfied, from the declarations of Mrs. W., that a good and valid gift did take place, such gift was not affected by the possession of the donor subsequent to such gift.

These instructions the court below refused to give entire, but charged in relation to the first of these propositions: " If the gift was complete in the lifetime of Mrs. W., it could not be defeated by her subsequent will." In relation to the second proposition, that it was true, with this qualification, " if such declarations were accompanied, and connected with *acts* of the party giving, distinctly recognizing the rights of the donee, or acts of the donee, with knowledge of the donor, exercising dominion and control of the property without objections from the donor, they were good to prove delivery and other requisites of a good gift."

To which the counsel for the plaintiffs excepted.

In relation to the third proposition, " that if the jury were satisfied from the declarations of Mrs. W., that a good and valid gift did take place, such gift was not affected by the possession of Mrs. W., the donor, subsequent to such gift. The court charged, that " this was true as

applied to a perfect gift, that which contemplated words of giving in the present time, followed by actual delivery, *or what was before stated to be equivalent to delivery."*

To which qualification the counsel for the plaintiffs excepted.

The presiding judge further charged the jury, that bare declarations by a party, that *he had given property,* were not sufficient evidence of delivery to constitute a valid gift, unless there was also evidence of some act on the part of the donor distinctly recognizing and affirming the fact of a gift, to which the declarations applied, as before stated, or some act on the part of the donee, with the knowledge of the donor, appropriating it to her own use and benefit.

To which the counsel for the plaintiffs excepted.

ROBERT TOOMBS and ALEXANDER H. STEPHENS, for the plaintiffs in error.

MR. TOOMBS made the following points:

1st. That parol admissions of a party or privy, are competent evidence of all facts which may be lawfully established by parol evidence.—*Greenleaf's Ev.* 235, 236; *ib.* 5.

2d. That declarations of the donor, that she had given, and that "the property belonged to the alleged donee, were sufficient evidence from which the jury might infer all the requisites of a valid gift, without other evidence of any act whatever by donor or donee, and that such declarations are evidence of delivery to be determined by the jury, and not by the court, and that if any act was necessary to the completion of said gift, the refusal of the donor to sell the property for the reasons assigned by her in the record, was sufficient to warrant the jury in presuming delivery.—*Grangiac* vs. *Arden,* 10 *Johns. R.* 292; *Reid* vs. *Colcock,* 1 *Nott. and McCord,* 592; *Brashears* vs. *Blassingame,* 1 *ib.* 223; *Davis and wife* vs. *the Executor of Davis, ib.* 224.

F. H. CONE, C. J. JENKINS, and T. R. R. COBB, for the defendant in error.

MR. JENKINS submitted the following points and authorities:

1st. Counsel cannot rely upon an omission, on the part of the court below, to charge upon a point, concerning which he was not required to charge, and which is not embraced in the bill of exceptions.

2d. A bare declaration, that a party *had given,* unaccompanied by some act equivalent to delivery, is insufficient to support a claim of title to personal property. And the act or acts relied on to supersede the proof of delivery, must amount to an abandonment of dominion by the donor, or its assumption by the donee, with the knowledge and acquiescence of the donor.

3d. It is the province of the jury to determine whether the circumstances in proof, show a voluntary abandonment on the one part, or permissive assumption on the other, of the dominion, or are tantamount to delivery, and it is their duty to consider in connection with these countervailing circumstances adduced on the other side, and if the jury were correctly instructed as to the law, this court will presume that they have properly applied it to the circumstances in evidence.

4th. Apart from the question of delivery, the jury were instructed, that if they found that there had been a verbal gift, qualified by the reservation of a life estate to the donor, the gift is invalid, and if there was testimony to establish that qualification, the verdict should be sustained.—2 *Black. Com.* 441-2; 2 *Kent Com.* 354; *Strange R.*954; 2 *Ves., Sen.,*431; 2 *Johns. Rep.* 52, 726; 18 *ib.* 145; 2 *Barn. and Ald.* 551; 7 *Taunt.* 224; 2 *Gill and John. R.* 208; *Hammond's R.* 737; 2

*Leigh's R.* 337 ; 1 *Nott and McCord,* 218, 239 ; 2 *Ala. R.* 117 ; 1 *Stewart and Porter,* 56 ; 6 *Randolph,* 135, 541 ; 4 *Harris and McHenry,* 537 ; 2 *Bailey,* 588 ; 1 *Jarman on Wills,* 11, 12, 13 ; 3 *Dev. R.* 171, 263 ; 2 *Taylor's R.* 274.

MR. CONE, in conclusion.

In this case, the plaintiff seeks to recover the slaves in controversy, on the ground of a parol-gift made to the wife of plaintiff by Mrs. Elizabeth Williams, in her lifetime, and of whose last will and testament the defendant is executor, and in that capacity the negroes came into his possession.

. The recovery is resisted on two grounds :

1st. That the property never was delivered to the donee, nor did Mrs. Williams, in her lifetime, ever relinquish her dominion over it.

2d. If any gift was ever made, that the evidence shows that it was not to take effect until the death of Mrs. Williams, and was therefore void as a gift *inter vivos.*

As to the first point :    Delivery is essential to perfect and render valid a parol-gift of personal property.—2 *Blackstone's Com.* 441–2; 2 *Kent's Com.* 354; *Strange Rep.* 954; 2 *Vesey, Senr.,* 431 ; 2 *Johns. Reps.* 52 ; 7 *ib.* 26 ; 10 *ib.* 293 ; 17 *ib.* 301 ; 18 *ib.* 145 ; 2 *Barn. and Alderson,* 551 ; 7 *Taunton,* 224 ; 2 *English Com. Law Rep.* 81, *S. C.* ; 9 *Vesey,* 1 ; 12 *Vesey,* 39 ; 2 *Gill and Johnson,* 208 ; *Hammond's Reps.* 737 ; 1 *Hill's Rep.* 13 ; 3 *Hill,* 254 ; 2 *Leigh,* 337 ; 1 *Nott and McCord,* 239 ; 14 *Johns. Reps.* 222 ; 2 *Alabama Rep.* 117; 1 *Stewart and Porter,* 56 ; 1 *Randolph,* 135, 541 ; 4 *Harris and McHenry,* 537.

As to the second point—2 *Bailey,* 588 ; 1 *Jarman on Wills,* 11, 12, 13.

MR. TOOMBS, in conclusion, for the plaintiffs in error.

LUMPKIN Judge, having been originally of counsel, gave no opinion.

*By the Court*—WARNER, Judge.

This case comes before us on a bill of exceptions to the charge of the court below to the jury on the trial of the cause.

The counsel for the plaintiffs in error requested the court to instruct the jury that they had the right to infer delivery, and every other requisite of a good and valid gift, from the declarations of the donor " that she had given the negroes to the donee, that they belonged to her, and she had no right to sell them ;" which instruction the court refused to give as requested, but instructed the jury—" If such declarations are accompanied and connected with *acts* of the party giving, distinctly recognizing the rights of the donee, or acts of the donee, with knowledge of the donor exercising dominion and control of the property, without objection from the donor, they are good to prove delivery and other requisites of a good gift."

By the common law, to make a valid gift of personal chattels, there must be an immediate possession of the thing delivered to the donee.— 2 *Black. Com.,* 441 ; 2 *Kent's Com.* 438 ; *Noble* vs. *Smith,* 2 *John. Rep.* 52.    Do the declarations of the donor, " that she had given the negroes to the donee, that they belonged to her, and she had no right to sell them," authorize the jury to find there had been such a delivery of the property as required by the common-law rule, when the donor has continued in the possession of the same, and exercised the dominion over it ?    We think not, and concur in the opinion of the court, below,

Anderson and Wife *vs.* Baker.

that there must be some *act* done by the donor from which a delivery may be presumed ; and that the bare declaration of the donor that she had given the property to the donee is not sufficient.   There must be some evidence that the donor has parted with the *dominion* of the property.

We do not hold an actual manual delivery is necessary to constitute a valid gift, but there must be some *act* shown, from which the jury would be authorized to infer there has been such a delivery of the property as the subject-matter of the gift would authorize.   Where the gift is made to an infant, of a negro, and the donor hires out the negro in the name of the donee, and for his benefit, this would be such an *act* on the part of the donor, coupled with the declaration he had given the negro to the donee, as would authorize the jury to presume there had been an abandonment of the dominion of the property by the donor to the donee.   So, the declarations of the donor in this case that she had given the negroes to the donee, with the addition that *she had delivered her possession of them*, would have been *prima facie* evidence of the fact.

The argument for the plaintiffs in error insisted, that where it was proved by the declarations of the donor that *she had given the negroes to the donee*, it was a presumption of law that all the requisites necessary to constitute a valid parol-gift had been complied with, notwithstanding the possession of the property remained in the donor until her death. One reason given why a parol-gift of personal chattels is not valid by the common law, without delivery of possession is, that the *locus penitentiæ* remains to the donor.   Although the donor has said he will give, or has given the property to the donee, yet, if he repent of the gift *before he has parted with the dominion of the property by delivering the possession to the donee*, he has the right to do so, and the title does not pass from him.   *Presumptions* may be destroyed by *facts*.   In this case, it is shown, Mrs. Williams, the donor, retained the possession of the negroes until her death.   Why is not the presumption as fair and legitimate that she repented of the gift which she said she had made to the plaintiff, before parting with the dominion of the property by a delivery of possession, as it is to presume a delivery of the possession thereof from her declarations that she had given the property to the donee ?

Possession of personal property is *prima facie* evidence of ownership ; and the fact that she retained the negroes in her possession for some years after the *marriage* of the donee, which took place after the alleged gift is proved to have been made, affords strong evidence that she repented of the gift before parting with the dominion of the property, and that there never was a delivery of the possession to the donee so as to vest the title thereto in him.

The counsel for the plaintiffs in error have relied mainly on the following cases, to establish the principle that the jury are authorized to infer a delivery of possession of the property, from the declarations of the donor " that she had given the negroes to the donee," &c.— *Brashears* vs. *Blassingame*, 1 *Nott and McCord's Rep.* 223 ; *Davis and wife* vs. *the ex'rs of Davis, ib.* 225 ; *Grangiac* vs. *Arden*, 10 *John. Rep.* 302 ; *Reid* vs. *Colcock, Nott and McCord*, 592.

In *Brashears* vs. *Blassingame*, the evidence of the gift was the repeated declarations of the father, both before and after the marriage of his daughter, that he had given the negroes to her ; and at one time, *when the negroes were seen at work for the daughter at her father's house, he said he had given them up to her.* Afterwards, when the daughter and her husband were about to leave her father's house to go to housekeeping, he made a *formal delivery* of the negroes, together with household and kitchen furniture, to the daughter and her husband *until he should call for them.* It will be seen that in this case there were *some acts*, from which a delivery of the property might be presumed. The declarations were made by the donor when the *negroes* were in the *employment of the donee;* and there was a *formal delivery* of the negroes, attempted to be qualified by a loan, *until he should call for them ;* but the court *repudiated the loan,* and it was competent for the jury to say whether the delivery of the negroes had reference to *the gift* which he declared he had made of them, or as a loan. Mr. Justice Nott, who delivered the opinion of the court in that case, says, " that a delivery is necessary to perfect a parol-gift of a chattel, is distinctly admitted : without it, there is no gift. When, therefore, the old man said he had given the property to his daughter, he must be understood to have done it with all the solemnities necessary to constitute a gift, *and the subsequent possession with his consent, was sufficient evidence of delivery.*" The learned judge in this case recognizes the common-law rule, that there must be a *delivery of possession ;* and that the possession of the negroes by the donee, with the consent of the donor, was in compliance with that rule.

In *Davis & wife* vs. *ex'rs of Davis*, the court say : " The formal ceremony of a delivery is not essentially necessary. It is sufficient if it appear that the donor intended an actual gift at the time, and evidenced such intention by *some act* which may fairly be construed into a delivery, as in the case cited from *Strange*, where the donee was put into possession by being entrusted with a key, &c. The donor acknowledged he had given the negroes to his daughter, when questioned on the subject, and at a time when *she had one of them in her arms.* This was of itself evidence of a delivery, or surrender of his right to his daughter, and, accompanied with *other circumstances*, might be deemed a sufficient proof of a prior delivery of all the negroes in dispute."

In *Grangiac* vs. *Arden*, the donor purchased a lottery-ticket, and gave it to his daughter, who was an infant—*wrote her name on the back of it.* The ticket drew a prize of $5,000, which was paid to the donor, who frequently declared he had given the ticket to his daughter. On one occasion he said Eliza should not divide it with the family, the ticket was her own, and the prize-money belonged to her, and she should have the whole of it, and he *would put it in trade for her.* Some years afterwards the mother of the donee being ill, reminded the donor of the prize-money, and requested him to take care of it for his daughter, when he replied : " *You know the ticket was Eliza's ; the money is hers ; and I have kept it in trade for her to a good profit ; I will never take a shilling of it, or of the profit ; she shall have it all.*" The donor declared he would put the money in trade *for the donee*, and some years afterwards declared *he had done so to a good profit.* In this case

there were *acts* done by the donor, from which the jury might infer a delivery, independent of the declarations of the donor, such as writing the donee's name on the back of the ticket, and placing the prize-money in trade *for her,* and thereby distinctly recognizing *her dominion* over it, and separating it from the rest of his estate : for if he put the money in trade *for her,* it was not *for himself.*

In *Reid* vs. *Colcock,* there does not appear to be any acts on the part of the donor, from which a delivery of possession of most of the negroes can reasonably be inferred, (with the exception of Billy,) other than his declarations made at different times ; but Mr. Justice Johnson, who delivered the opinion of the court, places the decision on the ground that the rule has been fastened on them by the decisions of the courts in that State, " beyond the means of loosing the fetters without too much violence to the system." In delivering the opinion of the court in that case, he avails himself of the occasion to remark : " I have always regarded parol-gifts to children, unaccompanied by a distinct delivery and possession, with great jealousy ; and always feel it my duty to caution the jury not to support them, except on the most satisfactory proof; and if I were now called upon to say what the law should be, I would unite heart and hand in rejecting them."

Shall this court adopt a rule of decision for the government of all similar cases, which it might have occasion hereafter as deeply to regret, as the learned judge whose opinion has just been quoted ? Or shall we adhere to the common-law rule, which requires evidence of *some act* on the part of the donor, independent of his or her declarations, that he or she had given the property to the donee, from which a delivery of possession may legitimately be inferred ? We are of the opinion the integrity of the common-law rule will best be maintained, by requiring proof of some act on the part of the donor from which a delivery may be presumed ; or at least a distinct declaration on his part, that there had been a delivery of the possession of the property to the donee. The bare declaration by the donor, that he or she had given the property to the donee, is not sufficient in our judgment to authorize a jury to infer that the legal requisites of a parol-gift have been complied with.

There are two distinct facts to be established, to make a valid parol-gift. First, that the donor *has given the property* to the donee. Secondly, that there has been a *delivery of possession* to the donee.

On what principle is it that the fact of *delivery* is to be presumed from the other fact, that the donor said she had *given* the property ? On what principle can it be fairly inferred that the donor, who remains in the possession of the property, has relinquished the dominion of the same to the donee, by proof of the fact that the donor said she had given the negroes to the donee ? Does the fact that the donor declares she *has given* the negroes to the donee, also prove a *delivery* of them to her ? If the fact of delivery is necessarily included in the act of giving the property by parol, then further proof of delivery is not necessary ; but if the fact of delivering the possession is not necessarily included in the act of giving the property by parol, then it would seem there ought to be evidence to establish the act of giving the property by

parol on the part of the donor; and evidence of some act going to establish the delivery also, in order to make a perfect parol-gift.

We are therefore of the opinion the instruction given by the court below to the jury in this case, was a fair exposition of the common-law rule, applicable to the facts presented by the record; and was correct, both on principle and authority.—*Pennington, adm. of Patterson* vs. *Gittings, ex'or,* 2 *Gill and John. Rep.* 208; *Ewing* vs. *Ewing,* 2 *Leigh's Rep.* 337; *Sims* vs. *Sims,* 2 *Alabama Rep.* 117.

Let the judgment of the court below be affirmed.